We'll hear the next case, Lowell v. Vermont Department of Children. Good morning, your honors. May it please the court. My name is Colin Hagen on behalf of the appellants. Placement on Vermont's Child Protection Registry will brand Ms. Lowell and Mr. Healy with the indelible label of child abusers, which this court has appropriately recognized as one of the potent and destructive accusations that a society can level against a parent. This label, in turn, creates a stigma... You can clear something up for me. Was there some sort of discretion with respect to being listed on the register? Was there some ability of litigants to ask not to be scheduled? No, your honor. The way it works is that once the Department of Child and Family Services has determined through their investigation that they have substantiated the appellants as child abusers, the appellants have the right to request a review, which is an administrative review, not a hearing. It's between an arbiter that is, I guess, affiliated with the Department of Children and Family Services. If that review results in a favorable decision in the favor of the state, then you're automatically on the registry. You are eventually on the registry? Yes, yes, sir. That's the review that has the standard that a reasonable person would find these allegations credible, correct? Yes, your honor. It's something to the effect that there is some credible allegation that a reasonable person would find that there has been harm. We respectfully submit that that is highly akin to the standard that this court found inadequate in Valmonte v. Bain. And there it was akin but not the same. Well, there the standard was credible evidence. And then the court said, if it's not preponderance of the evidence, then that is not sufficient for due process purposes. So I think that is highly similar to the reasonable person standard that is articulated in the statute with respect to the review at issue in this case. And that review is stymied by a lack of notice and a lack of opportunity to be heard. The type of notice that this court has held is required to suffice for due process requires that the notice set forth the alleged misconduct with some particularity. That was in Spinelli v. We have a younger issue here or an abstention issue here, right? So you got to fit yourself into the younger, I think it's sprint, whatever framework. So in order to go forward with this, right? Yes, your honor. And so in that framework. Absolutely. Because younger does not apply in the first instance as the Supreme Court held in that Sprint v. Jacobs case. Younger does not apply unless there is an adequate remedy and where there's no irreparable harm. Even if it did apply, there are certain exceptions such as bad faith, harassment, and irreparable injury. What we have alleged and what this court and the Supreme Court have routinely held is that a constitutional deprivation is irreparable harm per se. The court, the Supreme Court has held that generally. This court has held that in the context of a Fourth Amendment violation in Lynch v. City of New York. This court has held in Barry v. City of New York that violation of why, why isn't there an adequate remedy here through the administrative review process and then the judicial, the state judicial review process? Yes, your honor. First of all, widely recognized and held by the state Supreme Court that the Human Services Board, the HSB, which is the administrative review, doesn't have the ability to do things like award damages, like award injunctive relief, or even declaratory relief. It can only reverse the reviewer's decision, uphold the reviewer's decision, or remand the case back to the reviewer for further findings. But that relief to the extent that it exists comes after you've already been placed on the registry and you're already wearing the scarlet letter of a child abuser and you're already subject to the employment consequences that carries before you may ultimately be entitled to that remedy. Let me ask you this. Assuming hypothetically that the district court hadn't abstained or that Younger didn't apply, back below, what specifically are you asking the district court to do? We were asking the district court to either enjoin going forward with the review or require the state to provide things that are the hallmarks of due process, an unredacted copy of this case file that would presumably provide the notice that is the bare minimum of what was alleged to have happened, to allow things like cross bring in is effectively their own testimony. Yes, they can bring in certain documentary evidence, but that they cannot bring in the evidence that is the most persuasive. They can't call the child, Mary, who would testify that she has recanted or is willing to recant the allegation of pill snorting that gave rise to this whole proceeding in the first place. What would be the district court's authority to in effect do as you ask and rewrite the regulatory, refashion, reconfigure the regulatory regime? Well, it doesn't mean to reconfigure it. The district court could simply hold that that regime is unconstitutional on its face or specifically as applied to the appellants and that it cannot go forward absent these hallmarks of due process. I was going to say that the appellants cannot be placed on the child protection registry before there has been a due process compliant hearing. Have they been placed on the registry yet? No, your honor. And by the way, just so I'm clear, this is only an appeal from the motions for injunctive relief, right? You've got a damage claim that will proceed. That's correct, your honor. That portion of the case was stayed and we're appealing specifically from, you know, it should be noted that the court did not hold that the appellants had failed to receive injunctive relief. It could not reach that question because it held that abstention was warranted. And because abstention is not warranted where there's irreparable harm, the court should not have abstained in the first place. All right, thank you. You have some time for rebuttal. We'll hear from Mr. Battles. Hi, good morning, your honors and may it please the court. Ben Battles for the appellees. The district court's decision should be affirmed because the requirements for the exceptions apply here. This case falls squarely into the second category of cases recognized by the Supreme Court and this court as recently as a few weeks ago in the Helms Realty versus City of New York decision that are appropriate for a younger abstention. And those are cases that are akin to criminal prosecution in three important respects. First, initiated to sanction an individual for a wrongful act. And here it's placing a child at of harm through abuse or neglect. It's two, this is a proceeding brought by the state here at the Vermont Department for Children and Families. And three, it stems from an investigation that culminates in a formal charge. And the only aspect of that analysis that appellants dispute is that, you know, there wasn't a real investigation here, but that's completely belied by the allegations in their complaint where there's, as alleged, there was a report made to a mandated reporter who was a mental health counselor by one of the children. That counselor was required by statute to relay the information to DCF. It did that. And then DCF interviewed the reporter, interviewed the parents, interviewed the children, and issued a formal substantiation. And, you know, on the facts of this case, I think that ends the younger analysis. It's squarely, there's a pending proceeding. Part of the younger analysis is you have to have adequate remedies, adequate chance to prosecute your federal constitutional claim, right? And I'm just not sure how to work in, and maybe you can explain to me the fact that the Supreme Court of Vermont has said that the Second Circuit's law, in this case, Valmonte, doesn't apply and the procedures are just fine. So since they've said that, how do they get an adequate chance to prosecute their federal remedies? Thank you, Your Honor. And I think it's a good question how those, because there was these factors that were considered before Sprint, which is included, you know, it's an important interest and an adequate alternative remedy. And then in this court's decisions after Sprint, it says those are additional factors. It's not exactly clear, and I think it was the Falco case that discussed this, how to weigh those in. But we, you know, we think we clearly meet those factors as well. And, you know, one, they have three levels of review as of right. They have this administrative review before an independent contractor. They have a de novo hearing before the Human Services Board. And then they have a full appeal in front of the Vermont Supreme Court. And with respect to the Valmonte case, I mean, one, that case did not involve younger extension. So that's, I think it's in opposite to what this court's looking at right now. And also, it was looking at New York system, which was a distinct system and their standard was before. The standard here is different. It report is based on accurate and reliable information that would lead a reasonable person to believe that the child has been abused or neglected. That sounds a lot more like a preponderance. Can you clarify for me how this registry work? I mean, the suggestion is that you are automatically immediately put on the registry and that brands you as a child abuser, but yet it hasn't happened here. I mean, is that, is it correct that you are put on automatically or why hasn't it happened to you? Yeah, thank you for asking that. And the reason it hasn't happened in this case is because appellants filed this lawsuit immediately before, not immediately, I should say it was several days before the hearing was supposed to take place. And then in the district court, my clients, the department voluntarily agreed at the district judge's suggestion to not go forward with the hearing while the court considered the competing motions. We extended that agreement through the initial stay in the district court, which was denied. Then appellants sought a stay from this court, which was denied. In the meantime, the pandemic happened and everything went remote and appellants refused to agree to participate in a remote review. So that's the only reason it hasn't gone. So absent this sort of agreement, and if we haven't had the pandemic complications, they'd be on the registry now? Well, they would have had the review. And if the review was, if the substantiation, excuse me, if the substantiation was upheld, they would have been placed on the registry. And it's important to note, this is a confidential registry. So it's not a branding that's made to the public. It's available to prosecutors. It's available to state agencies that work with vulnerable populations. And it is made available to employers, but only if the individual's consent. So this is not a public registry that anyone can look up. It's a very limited subset of the population that has access to this. And most of that subset requires... How does the employer know to ask? Well, employers that work in these, it's like daycare providers, assisted living facilities, I think it's part of their hiring process that they will ask. Okay. They're not required to ask in Vermont, but they generally do. Well, I think there are requirements for, regulatory requirements that they screen their employees. They do have to ask. They do have to ask, but before they do, they will, they need to get the applicant... If they do have to ask, it's the same as making it available to employers. I mean, it's not confidential for employers because they do have to ask. They do, but the person doesn't have to apply for a job in that industry and they have to consent before the search happens. Okay. So that's the distinction. You first called this a hearing before they go on the registry, but what you meant was this paper review. Yeah, it's this review with an in-person meeting. And the Third Circuit, and we cite this in our brief, and it's the Howard versus New Jersey Division of Family Services, considered younger abstention in this exact same circumstance under New Jersey system, except the only distinction there was that the individuals who are at risk of going on the registry didn't have a right to participate in the first round of review, the administrative level review, but the Third Circuit nonetheless held that it would abstain because there was adequate opportunities, because it was within the jurisdiction, ultimate appellate jurisdiction of the New Jersey courts and the New Jersey Supreme Court. So my claim is that my due process rights were compromised because of the nature of the procedures, proceedings I had to go through. I didn't really have a chance to confront my accusers. I only had sharply redacted documents to work with, didn't have an opportunity to cross-examine and so forth and so on. And so it seems to me, under your procedure, I may have to wait, you know, three, four, five years to get through, and I'm on the register. I have to wait two, three, five years to get an answer from the Vermont Supreme Court. Why is that constitutionally adequate? Well, you have the first level review, which happens relatively promptly. Obviously, there was a delay on that. Is that a forum in which constitutional issues, not without difficulty, can be adequately addressed and resolved? I mean, the reviewer doesn't have the authority to strike down statutes as unconstitutional, but certainly... Is a reviewer a lawyer? Is a reviewer learned in constitutional law? It's an independent contractor. I believe sometimes they are lawyers, sometimes they are, but it's not necessarily an attorney. So the answer to that has to be no, right? Is it constitutional? I mean, the first level review, the person's entitled... to adjudicate constitutional questions, correct? Yes, correct. Yes, the applicant has the ability to set up their constitutional argument. They're entitled to counsel at that proceeding, and then they go before a full contested case before a judicial officer, you know, administrative officer who is an attorney, and they're entitled to put on evidence, and it's a trial, essentially, and then it goes from there to the Vermont Supreme Court. And that officer is authorized and competent to pass on these constitutional questions? That's part of their charge, is to determine whether the actions... And they consider other areas coming out of state government as well, but it's to consider whether the state action was consistent with federal law. That's part of their statutory charge. Consistent with due process? Well, it says federal law, that certainly includes due process. All right, I'll just briefly address, you know, the argument that the bad faith, harassment, or extraordinary circumstances, exception apply, and this court's Diamond D construction case really made clear how narrow that is. For bad faith, you need, you know, subjective motivation to harass or retaliate, and that is just simply not alleged here. And extraordinary circumstances, that is the issues we've been talking about, is that there's no available state remedy, and there's great immediate harm absent federal intervention, and that has not been alleged here. Thank you. We'll hear the rebuttal. Mr. Hagan? Thank you, Your Honor. I'd like to start with the issue of why the appellants haven't been put on the registry yet. And I think it should be noted that before the DCF scheduled the review, there to vindicate a compelling state interest to protect children just doesn't hold water. There's no immediacy to holding this review and putting the appellants on the registry. Their children have been returned to them after they were taken extra judicially and without process in the first place. And the state of its own volition delayed for a number of months before it all of a sudden, you know, started to schedule the review, and that's when we filed the complaint. Is your request for injunctive relief moot? No, it's not moot, Your Honor, because the state continues to seek to hold this review. And the only reason that it hasn't happened is because they, in light of the pandemic, the state wants to hold the review by telephone or video conference, and the statute specifically authorizes the accused to request a telephone or video conference, but it does not authorize the state to suggest or require a telephone or video conference. And that would further prejudice the appellants here because they're already hamstrung with the lack of notice, with the lack of an opportunity to cross-examine. And meanwhile, the state reviewer has access to the unredacted case file, routinely receives ex parte evidence, and if you're not even in the room with the reviewer, then you don't have an opportunity to see what notes or cheat sheets or anything else the reviewer has access to. So the appellants are left to glean what they can, and that is what this court has held is per se unconstitutional. And I would just add that, this is not akin to a criminal prosecution in the Sprint case. The Supreme Court identified a case where the state is trying to take the children as akin to a criminal prosecution, and that is not the case here. Thank you both. We'll reserve decision. Thank you.